IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

EARNEST FRANCIS, JR., :

    Plaintiff,

v. : Case No. 3:12-cv-87

DAVIS H. ELLIOT CONSTRUCTION CO., INC., *et al.*, : JUDGE WALTER H. RICE

    Defendants. :

---

DECISION AND ENTRY OVERRULING PLAINTIFF'S MOTION FOR RECONSIDERATION (DOC. #38)

---

On March 11, 2013, the Court issued a Decision and Entry Sustaining in Part and Overruling in Part Defendants' Motion for Summary Judgment. Doc. #37. It dismissed Plaintiff's claims of race discrimination and retaliation, and granted partial summary judgment in favor of Defendants on Plaintiff's hostile work environment claims. As to the corporate defendants, the Court dismissed the claims of supervisor harassment, but not the claims of coworker harassment. As to the individual defendants, the Court dismissed the hostile work environment claims against Brian Sarrett, but not against Clyde Legg and Mark Baker.

This matter is currently before the Court on Plaintiff's Motion for Reconsideration. Doc. #38. Pursuant to Federal Rule of Civil Procedure 59(e), Plaintiff asks the Court to reconsider its rulings on his claims of race discrimination,

and his hostile work environment claim against the corporate defendants arising out of alleged racial harassment by his supervisor, Clyde Legg.

"District courts have authority both under common law and [Federal Rule of Civil Procedure] 54(b) to reconsider interlocutory orders and to reopen any part of a case before entry of final judgment." *Rodriguez v. Tennessee Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004). However, a motion for reconsideration "is not designed to give an unhappy litigant an opportunity to relitigate matters already decided, nor is it a substitute for appeal." In addition, it cannot be used to raise new arguments. *Johnson v. Henderson*, 229 F. Supp.2d 793, 796 (N.D. Ohio 2002).

Traditionally, courts will grant a motion for reconsideration only: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or to prevent manifest injustice." *Id.* (quoting *In re Continental Holdings, Inc.*, 170 B.R. 919, 933 (Bankr. N.D. Ohio 1994)). In this case, Plaintiff argues that reconsideration is needed to correct a clear error of law.

**A.**

Plaintiff first challenges the Court's finding that he failed to establish a prima facie case of race discrimination under a single-motive theory. The Court found that he failed to present sufficient evidence from which a reasonable jury could find that he was treated less favorably than similarly-situated foremen outside the

2

protected class. The Court acknowledged that Plaintiff had denied some of the allegations levied against him, but found that, for purposes of establishing a prima facie case, the relevant question was not whether Plaintiff had actually engaged in the conduct alleged, but "whether any white foreman, accused of similarly egregious conduct that was corroborated during the course of an investigation, was treated more favorably." Doc. #37, at 14. Plaintiff failed to present any such evidence.

Plaintiff first argues that, in conducting its analysis, the Court erred in accepting as true all of the accusations levied against him by his crew members. He contends that, under Federal Rule of Civil Procedure 56, the Court must consider whether a reasonable jury could conclude that he is actually innocent of some of the accused wrongdoing, and that his conduct was therefore no more egregious than that of others outside the protected class. According to Plaintiff, if all of the allegations are automatically accepted as true, an employer could easily avoid liability simply by fabricating "unique" allegations of wrongdoing against an employee so that no one else is "similarly situated." He maintains that the Court's analysis makes it unreasonably difficult for him to carry his burden of establishing a prima facie case of race discrimination.

Perhaps quite tellingly, Plaintiff cites to no authority in support of this argument. In fact, the Sixth Circuit recently rejected a very similar argument. In *Dodd v. Donahoe*, 715 F.3d 151, (6th Cir. 2013), the plaintiff, an African-American mail carrier, was criminally prosecuted after being accused of stealing

3

mail. After the criminal charges were dismissed, he filed suit, alleging that he was discriminated against on the basis of race. The district court found that he did not establish a prima facie case of race discrimination because he failed to identify a white employee who stole mail but was not criminally prosecuted.

On appeal, the plaintiff argued that the district court erred in assuming that he did, in fact, steal mail, when there was no evidence to support that finding. The appellate court agreed but held that, regardless of whether the plaintiff *actually* stole mail, he nevertheless failed to show that similarly situated white employees were treated more favorably. Plaintiff had identified no white employee who was not prosecuted after being accused of similar misconduct. *Id.* at 156-57.

As the Second Circuit explained in *McPherson v. New York City Department of Education*, 457 F.3d 211 (2d Cir. 2006), in a discrimination case, the factual validity of the allegations against the employee is not at issue. Rather, the question is what motivated the employer to make the decision it did. *Id.* at 216 (citing *United States Postal Serv. Bd. of Governors v. Aikens,* 460 U.S. 711, 716 (1983)). *See also Oluyomi v. Napolitano*, 811 F. Supp. 2d 926, 947 (S.D.N.Y. 2011) ("[t]he issue to be proven in a discrimination case is whether there was an improper motive for the employment decision—not whether any conduct relied upon by the employer actually occurred").

In this case, Plaintiff failed to identify any white foreman, accused by his crew members of similarly egregious conduct, who was treated more favorably

4

than he was. Therefore, no inference of discrimination arises. *See Dodd*, 2013 WL 1694418, at *4.

Plaintiff next argues that the Court failed to consider whether Clyde Legg, who was also a foreman, was similarly situated to Plaintiff. Evidence shows that Legg also used racially derogatory terms but was never disciplined. Legg, however, was a general foreman, with authority to hire and fire, and was Plaintiff's supervisor. Moreover, there is no evidence that he used racially derogatory terms in the same manner Plaintiff allegedly did. Therefore, under no set of circumstances can Plaintiff show that he and Legg were similarly situated in all relevant aspects. *See Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998).

In addition, Plaintiff argues that it is inconsistent for the Court to find that he cannot establish a prima facie case of race discrimination, but also find that genuine issues of material fact preclude summary judgment on his hostile work environment claim. Plaintiff maintains that the Court should not strictly require him to show that he was treated less favorably than similarly situated white employees where other circumstances give rise to an inference of unlawful discrimination.

The Court disagrees. "Disparate treatment" and "hostile work environment" are two distinct theories of liability. Even though an employee may be subject to a racially hostile work environment, this does not necessarily mean that he was treated less favorably than similarly situated white employees in connection with a specific adverse employment action. In order to establish a prima facie case of

5

"disparate treatment" race discrimination, a plaintiff must show that he was replaced by a person outside the protected class or was treated differently than similarly situated nonprotected employees. *See Russell v. Univ. of Toledo*, 537 F.3d 596, 604 (6th Cir. 2008).[1]

Plaintiff has failed to show that the Court committed a clear error of law in concluding that he had failed to establish a prima facie case of race discrimination under a single motive theory.

**B.**

Plaintiff next challenges the Court's finding that he failed to create a jury question with respect to his "mixed motive" claim of race discrimination. He first urges the Court to reconsider its finding that the mixed motive analysis is not available for discrimination claims brought under Ohio Revised Code Chapter 4112. In support, he cites to several older Ohio cases.

The Court previously acknowledged that Ohio law on this issue is unsettled, but concluded that, in light of recent Sixth Circuit and Supreme Court case law distinguishing Title VII, which was specifically amended to include mixed motive

---

[1] Plaintiff appears to argue, for the first time, that he was replaced by someone outside the protected class since the next four employees promoted to foremen were white. However, motions for reconsideration are not an appropriate vehicle for presenting new legal theories or arguments that "could, with due diligence, have been discovered and offered during the initial consideration of the issue." *Younglove Const., LLC v. PSD Dev., LLC*, 767 F. Supp.2d 820, 824 (N.D. Ohio 2011) (internal quotation omitted) (ruling on interlocutory motion for reconsideration). Plaintiff fails to explain why he could not have raised this argument before now.

6

claims, from other discrimination statutes which were not so amended, the mixed motive theory was not available for discrimination claims brought under Ohio law. Plaintiff has not established that this was a clear error of law.

In the alternative, the Court held that Plaintiff had failed to present sufficient evidence to support a finding that Legg's racial bias was "a motivating factor" in the termination decision. Plaintiff maintains that the Court misapplied the "cat's paw" theory as articulated in *Staub v. Proctor Hospital*, 131 S.Ct. 1186 (2011), and failed to consider the evidence in the light most favorable to Plaintiff, the non-moving party.

Plaintiff correctly notes that, under *Staub*, Legg's racial bias may be imputed to Sarrett, the sole decisionmaker, if Plaintiff can show that Legg performed an act, motivated by a discriminatory animus, that was intended to cause an adverse employment action, and Legg's act was a proximate cause of the adverse employment action. *Id.* at 1194. *See also Chattman v. Toho Tenax America, Inc.*, 686 F.3d 339, 351 (6th Cir. 2012).

Plaintiff maintains that when Legg approached Sarrett to tell him that Nelloms was quitting because of the way Plaintiff had treated him, he did so intending that Sarrett would fire Plaintiff. But, as Defendants note, there is no evidence to support any such theory. Legg did not initiate the conversation with Sarrett about Nelloms. In fact, Legg was not even in the office when Nelloms came in to drop off his uniform. Nelloms Dep. at 42. After Nelloms told Sarrett that he needed to speak to Legg, Sarrett asked Legg what was going on. When

7

Legg told Sarrett that Nelloms wanted to quit, Sarrett instructed Legg to find out why. Sarrett Dep. at 33. Legg talked to Nelloms and reported back to Sarrett as Sarrett had instructed him to do. *Id.* at 34.

Accordingly, even viewing the evidence in the light most favorable to Plaintiff, no reasonable jury could find that Legg "immediately escalated" the situation by going to Sarrett, intending that Plaintiff would be fired. The "cat's paw" theory is therefore inapplicable. Plaintiff has failed to show that the Court committed a "clear error of law" in so holding.

### C.

Finally, Plaintiff challenges the Court's dismissal of his supervisor harassment claim against the corporate defendants. He argues that, based on the evidence presented, a reasonable jury could find that Legg's racial bias played a meaningful role in the termination decision, and that the Court, therefore, should not have considered the *Ellerth/Faragher* affirmative defense. Plaintiff's disagreement with the Court's finding that Legg's behavior did not culminate in Plaintiff's termination is insufficient grounds for granting relief under Federal Rule of Civil Procedure 59(e).

8

For the reasons stated above, the Court OVERRULES Plaintiff's Motion for Reconsideration.  Doc. #38.

Date: July 9, 2013

WALTER H. RICE
UNITED STATES DISTRICT JUDGE