IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

EARNEST FRANCIS, JR., :

    Plaintiff,

v. : Case No. 3:12-cv-87

DAVIS H. ELLIOT CONSTRUCTION CO., INC., et al., :

    Defendants.

JUDGE WALTER H. RICE

---

DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING IN PART PLAINTIFF EARNEST FRANCIS, JR.'S MOTION IN LIMINE (DOC. #45)

---

This matter is currently before the Court on Plaintiff Earnest Francis, Jr.'s Motion in Limine. Doc. #45. Plaintiff's one remaining claim of a racially hostile work environment is scheduled for trial on January 27, 2014. Plaintiff seeks to exclude evidence concerning the alleged reasons for his termination. He also asks the Court to take judicial notice that the term "banjo lips" is a racially derogatory term.

**I.    Relevant Law**

Although neither the Federal Rules of Evidence nor the Federal Rules of Civil Procedure explicitly authorize the Court to rule on an evidentiary motion in limine, the Supreme Court has noted that the practice of ruling on such motions "has

developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). The purpose of a motion in limine is to allow the Court to rule on issues pertaining to evidence in advance of trial in order to both avoid delay and ensure an evenhanded and expeditious trial. *See Indiana Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004) (citing *Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997)). Pretrial orders also often save the parties time and cost in preparing for trial and presenting their cases.

Courts are generally reluctant to grant broad exclusions of evidence in limine, however, because "a court is almost always better situated during the actual trial to assess the value and utility of evidence." *Koch v. Koch Indus., Inc.*, 2 F. Supp. 2d 1385, 1388 (D. Kan. 1998); *accord Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975). A court should not make a ruling in limine unless the moving party meets its burden of showing that the evidence in question is clearly inadmissible. *Indiana Ins. Co.*, 326 F. Supp. 2d at 846; *Koch*, 2 F. Supp. 2d at 1388. If this high standard is not met, evidentiary rulings should be deferred so that the issues may be resolved in the context of the trial. *Indiana Ins. Co.*, 326 F. Supp. 2d at 846.

## II.     **Evidence of Alleged Reasons for Termination**

Plaintiff asks the Court to exclude any evidence relating to the circumstances surrounding his termination. To recap, Plaintiff was terminated for

2

treating his crew members in an intimidating, demeaning and abusive manner. He allegedly regularly called his employees "dumb asses" and "mother fuckers." He also allegedly conditioned one employee's entrance into the apprenticeship program on sexual favors. He argues that this evidence is irrelevant to his own claim that he was subjected to a racially hostile work environment. He maintains that this evidence has no logical connection to the elements of his claim.

Plaintiff further argues that any probative value the evidence may have is substantially outweighed by the danger of unfair prejudice and should be excluded under Federal Rule of Evidence 403, because he would be forced to defend himself against these accusations. In addition, he argues that there is a risk of jury confusion because he need not show that he suffered a tangible employment action in order to prevail on his claim.

Defendants contend that evidence of Plaintiff's own racially derogatory language and his abusive treatment of his employees is indeed relevant because, in order to prevail on his hostile work environment claim, Plaintiff must prove, among other factors, that he *subjectively perceived* the environment to be abusive. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-22 (1993).

The Court agrees that Plaintiff's hostile work environment claim cannot be litigated in a vacuum. Evidence that Plaintiff himself used the same racially derogatory terms, *i.e.,* "nigger," about which he now complains is clearly relevant to his claim. Other evidence of instances where Plaintiff injected race into his conversations with his employees, including Devon Nelloms, is likewise relevant.

3

For example, Plaintiff allegedly told Nelloms that because Nelloms was black, he would never succeed at Davis Elliot unless he followed Plaintiff. Also relevant and admissible is evidence of those instances in which Plaintiff told his employees that he could treat them however he wanted without fear of discipline because he was African American. Although this evidence is obviously prejudicial, it is not *unfairly* prejudicial. Plaintiff cannot simultaneously use his race as a sword and as a shield. It is, therefore, admissible.

Nevertheless, not all evidence concerning Plaintiff's abusive treatment of his employees is necessarily relevant. Defendants appear to argue that Plaintiff's own generally abusive conduct, unrelated to race, may also be relevant to the question of whether he found the workplace environment to be subjectively abusive. This argument, however, comes close to advocating a position rejected by the Sixth Circuit. In *Jackson v. Quanex Corp.*, 191 F.3d 647, 662 (6th Cir. 1999), the Sixth Circuit held that the fact that the alleged racial harassment took place in a blue collar environment does not lower the relevant standard of what is acceptable. Citing *Williams v. General Motors Corp.*, 187 F.3d 553, 564 (6th Cir. 1999), the court "squarely denounce[d] the notion" that a typical blue-collar work environment, where offensive language and racial epithets may be common, "renders such conduct acceptable, normal, or part of 'conventional conditions on the factory floor.'" *Id.* at 662.

The Court defers ruling on the question of whether Plaintiff's own non-racial, but allegedly abusive conduct toward his employees is admissible to prove that

4

Plaintiff did not subjectively believe that he was subject to an abusive work environment. It is highly likely that the Court will be in a better position to rule on the admissibility of specific testimony when it arises in the context of the actual trial. Accordingly, while the Court's basic position is set forth above, counsel is urged to tread carefully and request a sidebar prior to pursuing any line of questioning that may run afoul of that position. Neither in the voir dire examination nor in the opening statements to the jury are counsel to refer to evidence upon which this Court has deferred ruling.

For these reasons, the Court SUSTAINS IN PART and OVERRULES IN PART Plaintiff's request to exclude evidence concerning the circumstances surrounding his termination.

### III.     Judicial Notice of Term "Banjo Lips"

Relying on Federal Rule of Evidence 201, Plaintiff also asks the Court to take judicial notice that the term "banjo lips," frequently used by Plaintiff's supervisor Clyde Legg, is a racially derogatory term directed at African Americans. The Court is permitted to judicially notice "a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). A fact that is judicially noticed is considered to be conclusively established. Fed. R. Evid. 201(f).

Plaintiff notes that UrbanDictionary.com defines "banjo lips" as a "racial slur directed at blacks" that "comes from the common large size of their lips." The term is also included in the "Racial Slur Database," www.rsdb.com.

In this case, however, the definition of the term is disputed, at least within the context of this particular workplace. Employees Timothy Stults and Rodney Rooks both testified that Legg used this term to refer to Plaintiff, who is African American, *and* to Rooks, who is white. Stults believed the term to mean that they "talked a lot and they talk a hundred mile an hour, always have something to say for everything." Stults Dep. at 20-21 (Doc. #29). Likewise, Rooks stated that Legg called him "'banjo lips' because I talk so much. To me, the term refers to a person who talks so much his mouth acts like a banjo." Rooks has never considered it to be a racially derogatory term. Rooks Decl. ¶¶2, 5 (Ex. A to Doc. #35). Brian Wheeler also testified that Legg referred to Plaintiff as "banjo lips" because Plaintiff "was always running his mouth about something." Wheeler Dep. at 11 (Doc. #30). And Thomas Manghene explained that Legg called Plaintiff by that name because "Earnest talked too much, and blah, blah, blah. But, I mean, I didn't think it was anything racial to it." Manghene Dep. at 10 (Doc. #31).

Given these differing interpretations, it would be inappropriate for the Court to instruct the jury that the term "banjo lips" is, in fact, a racial slur. In the alternative, Plaintiff asks the Court, with a slightly different twist, to take judicial notice of the fact that slang dictionaries have defined the term "banjo lips" as a racial slur. Although, from a technical standpoint, this fact may be readily

6

verifiable, the Court fails to see any significant difference in this request. Plaintiff is free to question witnesses about their common understanding of the term "banjo lips," but the Court finds that it is not an appropriate subject for judicial notice. The Court therefore OVERRULES Plaintiff's request.

### IV.  Conclusion

For the reasons set forth above, Plaintiff's Motion in Limine (Doc. #45) is SUSTAINED IN PART and OVERRULED IN PART.


Date: January 21, 2014            _____
                                  WALTER H. RICE
                                  UNITED STATES DISTRICT JUDGE